```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
NASDI LLC,                             :
                                       :
                   Plaintiff,          :
                                       :       17cv3578 (DLC)
              -v-                      :
                                       :       OPINION AND ORDER
SKANSKA KOCH INC. KIEWIT               :
INFRASTRUCTURE CO. (JV) d/b/a SKANSKA  :
KIEWIT JV,                             :
                                       :
                   Defendants.         :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiffs:
Mark L. McAlpine
Douglas W. Eyre
Thomas H. Trapnell
McAlpine PC
3201 University Drive, Ste 100
Auburn Hills, MI 48326

Adam David Cole
Chipman Brown Cicero & Cole, LLP
501 Fifth Avenue
15th Floor
New York, NY 10017

For defendants:
Paul Gordon Monte
Melissa Salsano
Peckar & Abramson, P.C.
41 Madison Avenue
New York, NY 10010

DENISE COTE, District Judge:

     NASDI LLC ("NASDI") has moved for reconsideration of the

Opinion of September 28, 2020 granting defendant Skanska Koch

Inc. Kiewit Infrastructure Co. (JV)'s ("SKK") motion for summary judgment on NASDI's claims and its counterclaims.  For the following reasons, the motion for reconsideration is denied.

## Background

The Court assumes familiarity with its prior Opinion in this case, and summarizes only the facts necessary to decide this motion.  NASDI LLC v. Skanska Koch Inc. Kiewit Infrastructure Co. (JV), 17CV03578, 2020 WL 5768319 (S.D.N.Y. Sept. 28, 2020).  In 2013, the Port Authority of New York and New Jersey (the "Port Authority") selected SKK as its general contractor to demolish and reconstruct the Bayonne Bridge, connecting Staten Island to Bayonne, New Jersey.  In July of 2013, SKK hired NASDI to perform the demolition work on the project, for a total payment of approximately $20 million.

The agreement between NASDI and SKK (the "Subcontract") contained detailed provisions in Article 7 providing a process through which the parties could submit a claim for "extra or additional compensation in money, extension of time . . . or other relief arising under or relating to the Subcontract."  Pursuant to Article 7, the claimant would have to submit a claim no more than 24 hours after it arose, and would have to provide updates regarding pending claims every 30 days.  The Subcontract required "strict compliance" with the claim procedure, stating

that a failure to comply would be "conclusively deemed to be a waiver" of the claim.

The Subcontract also contained a "no damages for delay" clause, which states that the Subcontractor "shall have no Claim against [SKK] for any loss or damage it may sustain through delay, disruption, suspension, stoppage, interference, interruption, compression, or acceleration of the Subcontractor's Work." The clause also provides that, even if SKK is found independently liable for delay, any damages would be governed by Article 7's claim procedure.

The reconstruction of the Bayonne Bridge proceeded in four phases. NASDI was required to work during phases 1, 2, and 4. Phase 4 of the bridge restoration was delayed by almost two years. In June of 2016, before phase 4 began, NASDI submitted a claim (the "June Claim") for additional costs it estimated it would incur because of the delay. SKK submitted the June Claim to the Port Authority, which indicated that it would likely enter into an aggregate settlement with SKK, and that SKK would then be responsible for compensating its subcontractors. On December 21, 2016, NASDI agreed to a schedule that would have it begin work on phase 4 on February 22, 2017. On December 30, 2016, however, NASDI demanded a settlement of its June Claim, suggesting that it would refuse performance if its demands were

not met.  SKK emphasized that it was still a long way from a final settlement with the Port Authority, but nevertheless provided a "preliminary review" of the June Claim, determining that, in total, NASDI owed SKK approximately $733,000.

On February 17, NASDI provided SKK with a Notice of Termination, asserting that SKK had abandoned the Subcontract, and that NASDI would therefore refuse to perform under it. After further communications, NASDI attempted to rescind its termination letter on February 23, while also demanding immediate payment of nearly $2 million.  SKK did not consider NASDI's rescission of its termination letter effective, however, especially as the date on which work on phase 4 was supposed to begin had already passed.  SKK therefore hired another company to complete part of NASDI's work for phase 4 at a cost of approximately $24 million, and then itself completed the rest of NASDI's work, adding another $24 million in costs.

NASDI filed this action on May 12, 2017, bring claims for breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing.  On February 28, 2020, SKK moved for summary judgment on NASDI's claims, as well as its counterclaims for costs associated with covering NASDI's breach. The case was reassigned to this Court on April 23.  An Opinion of September 28, 2020 granted summary judgment to SKK on NASDI's

claims and SKK's counterclaims, leaving for trial the issue of SKK's counterclaim for indemnification, and a determination of damages on its counterclaim for breach of contract.  <u>Id.</u> at *18.

On October 13, 2020, NASDI moved for reconsideration of the September 28 Opinion's grant of summary judgment on its claims of quantum meruit and breach of the covenant of good faith and fair dealing.  The motion for reconsideration became fully briefed on November 20, 2020.  On December 4, 2020, NASDI filed a letter requesting a stay of proceedings, because an involuntary Chapter 7 bankruptcy petition had just been filed against it.  A stay was promptly entered.  Roughly two years later, on November 3, 2022, NASDI filed a letter indicating that the bankruptcy proceedings had been dismissed.  The stay was lifted on November 4.

## <u>Discussion</u>

NASDI has moved to reconsider the September 28 Opinion. The standard for granting a motion for reconsideration is "strict."  <u>Cho v. Blackberry Ltd.</u>, 991 F.3d 155, 170 (2d Cir. 2021) (citation omitted).  A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  <u>Analytical Surv., Inc. v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir. 2012) (citation

omitted).  "A party may . . . obtain relief only when the party
identifies an intervening change of controlling law, the
availability of new evidence, or the need to correct a clear
error or prevent manifest injustice."  Cho, 991 F.3d at 170.
The decision to grant or deny the motion for reconsideration
rests within "the sound discretion of the district court."
Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (citation
omitted).

Through its motion for reconsideration, NASDI challenges
the findings in the September 28 Opinion that SKK was entitled
to summary judgment on its counterclaim that NASDI breached the
Subcontract, and on NASDI's claim for quantum meruit, arguing
that SKK had abandoned the Subcontract through the unreasonable
delay of stage 4 work by almost two years.  Finally, NASDI seeks
reinstatement of its claim that SKK breached the covenant of
good faith and fair dealing in making its calculation of the
amount NASDI might receive in a global settlement of delay
claims with the Port Authority.

NASDI argues in particular that the September 28 Opinion
was wrongly decided because: 1) New York law supports a finding
that SKK abandoned the Subcontract; 2) NASDI submitted evidence
showing that the delays were uncontemplated by the parties at
the time of contracting; 3) NASDI's expert report should have

been considered at summary judgment to support its argument that
the Subcontract had been abandoned; and 4) NASDI submitted
evidence showing that SKK acted in bad faith in refusing to
settle NASDI's claim.  Each of these arguments is unavailing.

I.    Abandonment

NASDI argues that the Subcontract's no-damages-for-delay
clause does not bar its quantum meruit claim because, by phase
4, SKK had abandoned the Subcontract.  This argument was raised
in connection with the briefing of the summary judgment motions,
and was already rejected.  NASDI LLC, 2020 WL 5768319, at *10–
12.  As the September 28 Opinion found:

> In support of its argument that SKK abandoned the
> Subcontract NASDI cites nothing more than the fact of
> delay itself.  NASDI does not point to any
> manifestation by SKK of any intent to relinquish the
> Subcontract.  It offers no evidence that SKK did not
> intend to complete the Project, including the
> demolition work required in Stage 4.

Id. at *10.

While NASDI now cites to a document dated June 22, 2015
authored by SKK, it also acknowledges that neither party
submitted the document to the Court in connection with the
summary judgment motions practice.  It is unnecessary therefore
to discuss the document.

Furthermore, even if the contract had been abandoned, NASDI
has not shown that it is entitled to reconsideration of its
quantum meruit claim.  A claim of quantum meruit generally

allows a party to recover the "fair and reasonable value of services rendered." Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 (2d Cir. 2004).  An action for quantum meruit is not available, however, "if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005).  NASDI cannot recover in quantum meruit for the delay in the initiation of phase 4 because, as the September 28 Opinion explained, it presented no evidence that it performed any work in preparation for phase 4.  NASDI LLC, 2020 WL 5768319, at *12.  Accordingly, NASDI has nothing to recover.

NASDI nevertheless argues that the September 28 Opinion should be reconsidered because New York law does not require parties to terminate a contract in order to abandon it.  But the September 28 Opinion never says otherwise.  It found that SKK had not abandoned the contract because it had made payments and scheduled work pursuant to it.  See id. at *10-12.  Indeed, as the September 28 Opinion found, "SKK has provided uncontradicted evidence of its commitment to the Subcontract." Id. at *11.

NASDI also argues that the intent of the parties is not relevant to proof of abandonment, and that it only needed to

provide evidence of any one of the four exceptions to the enforceability of no-damages-for-delay clauses articulated in Bovis Lend Lease LMB Inc. v. GCT Venture, Inc., 775 N.Y.S.2d 259, 259-60 (1st Dep't 2004).  But only one such exception relates to abandonment, and that exception requires "intentional abandonment of the contract."  Id. (emphasis added). Additionally, as explained below, NASDI has not established that the no-damages-for-delay clause has been rendered unenforceable due to "uncontemplated delays."  Id.  Accordingly, the September 28 Opinion need not be reconsidered.

II.  Uncontemplated Delay

NASDI argues that its claim for quantum meruit should be reinstated for a second reason.  It contends that the Subcontract's no-damages-for-delay clause is not enforceable, because the delay before phase 4 work began was unreasonable or unforeseeable.  But, as explained above, even if the no-damages-for-delay clause were unenforceable, NASDI could not recover on its quantum meruit claim.  NASDI cannot recover for any damages caused by the delay before phase 4, because it did not provide evidence that it performed any work in preparation for phase 4.

In any event, a no-damages-for-delay clause may be unenforceable when damages are caused by "uncontemplated delays."  Id. at 260.  NASDI did not rely on this argument in its summary judgment briefing, however, and the argument

9

therefore need not be considered here.  See NASDI LLC, 2020 WL 5768319, at *10 n.9.  Regardless, NASDI has not met its "heavy burden" of establishing that any delays were so severe as to render the no-damages-for-delay clause unenforceable.  See Dart Mech. Corp. v. City of New York, 891 N.Y.S.2d 76, 77 (1st Dep't 2009).

The primary evidence that NASDI offers in favor of its argument is the fact of the delay itself.  But this evidence does not show that the delay was uncontemplated.  NASDI also cites a White Paper in which SKK explains, less than a year after NASDI began its work, that the bridge reconstruction project was poorly planned and afflicted by multiple delays. But "inept administration or poor planning . . . does not negate application of the 'no damages for delay' provisions."  LoDuca Assocs., Inc. v. PMS Constr. Mgmt. Corp., 936 N.Y.S.2d 192, 192 (1st Dep't 2012) (citation omitted).  Finally, NASDI emphasizes the length of the delay.  But "the length of the delay" alone does not transform a contemplated delay into an uncontemplated one.  Id.  New York courts have previously found delays of similar or greater length insufficient as a matter of law to render unenforceable a no-damages-for-delay clause.  See, e.g., Commercial Elec. Contractors, Inc. v. Pavarini Constr. Co., 856

N.Y.S.2d 46, 317 (1st Dep't 2008) (8-20 month delay); <u>Dart Mechanical Corp.</u>, 891 N.Y.S.2d at 76 (32-month delay).

III. The Riggs Report

In a final argument in support of the reinstatement of its quantum meruit claim, NASDI contends that the September 28 Opinion improperly refused to consider a report from NASDI witness Richard Riggs (the "Riggs Report"). Riggs purported to offer an expert opinion relevant to the issues of abandonment and uncontemplated delay. The Riggs Report states that NASDI's work changed significantly from the work the Subcontract initially ordered it to perform, and therefore concludes that the Subcontract was abandoned. NASDI argues that the September 28 Opinion improperly rejected this opinion on the basis that it was unsworn.

A court need not consider an unsworn letter submitted to oppose summary judgment. <u>See</u> <u>United States v. All Right, Title & Interest in Real Prop. & Appurtenances</u>, 77 F.3d 648, 657–58 (2d Cir. 1996). The authority NASDI cites is not to the contrary. <u>Cf.</u> <u>Capobianco v. City of New York</u>, 422 F.3d 47, 55 (2d Cir. 2005) (explaining that "[a]s a general matter, it is correct that unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment," but permitting letters anyway

because the defendants had already submitted them with their motion).

Regardless, NASDI's arguments regarding the Riggs Report were already considered and rejected in the September 28 Opinion. They need not be reconsidered here. As the September 28 Opinion explained, the Riggs Report does not support a finding that SKK abandoned the Subcontract. NASDI LLC, 2020 WL 5768319, at *11-12. The Riggs Report details several changes made during phases 1 and 2, focusing particularly on the removal of the sidewalk demolition, and the sequencing change in the demolition of the bridge's approach structure. The Riggs Report then concludes that these "amounted to a cardinal change" of the Subcontract. But that conclusion is not explained, and regardless does nothing to support a finding of abandonment. The Riggs Report does not address the many ways in which the parties continued to operate under the Subcontract, both before and after phases 1 and 2, and does not otherwise address issues relevant to the standard for determining whether a contract has been abandoned. See EMF Gen. Contracting Corp., 774 N.Y.S.2d at 43.[1] The September 28 Opinion therefore appropriately found that

[1] The Riggs Report also does not speak to whether the no-damages-for-delay clause was rendered unenforceable by "uncontemplated delays," as it does not discuss why phase 4 was delayed.

the Riggs Report did not preclude summary judgment against NASDI's claims.

IV.   Good Faith and Fair Dealing

Finally, NASDI moves to reconsider the September 28 Opinion's grant of summary judgment against its claim that SKK acted in bad faith in refusing to provide NASDI funds from its settlement with the Port Authority.  As evidence of bad faith, NASDI points to SKK's internal revisions of its assessment of NASDI's claims, the fact that it considered providing NASDI an incentive payment but then decided not to, the fact that SSK ended up paying far more for phase 4 than it would have paid NASDI, and evidence suggesting that SSK knew that NASDI's completion of phase 4 would likely come at a net loss to NASDI.

None of these facts suggests bad faith on the part of SKK. As the September 28 Opinion explained, SKK explained in detail its calculation that it did not owe money to NASDI, and NASDI has pointed to nothing in that calculation suggesting bad faith. NASDI LLC, 2020 WL 5768319, at *17.  Nor does the fact that SKK revised its internal estimate downward support NASDI's claim, particularly where NASDI has failed to point to any specific revision that it contends indicates bad faith.  Id.  NASDI also argues that SKK acted in bad faith because it ended up having to pay significantly more to complete phase 4 than it would have paid NASDI, and because it considered paying NASDI a $7 million

13

incentive payment, but then declined to.  But NASDI provides no argument more than a conclusory assertion that these facts suggest bad faith.

In a claim for breach of the implied covenant of good faith and fair dealing, the burden is on NASDI to provide evidence of bad faith.  Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc., 487 F.3d 89, 98 (2d Cir. 2007).  NASDI has provided no such evidence.  Accordingly, the September 28 Opinion's grant of summary judgment against NASDI need not be reconsidered.

## Conclusion

NASDI's October 13, 2020 motion for reconsideration is denied.  The case will proceed to trial on SKK's counterclaim for indemnification, and on the damages for its counterclaim for breach of contract.

Dated:    New York, New York
          November 15, 2022

                                          Denise Cote
                                      DENISE COTE
                            United States District Judge